2002 UT App 232

Jason Miles WILLIAMS and John Does 1–5, Plaintiffs and Appellants,

v.

Rulon JEFFS, et al., Defendants and Appellees.

No. 20010078–CA.

Court of Appeals of Utah.

July 5, 2002.

Christopher W. Edwards, Edwards & Associates, Hurricane, for Appellants.

Raymond Scott Berry and Rodney R. Parker, Snow Christensen & Martineau, Salt Lake City, for Appellees.

Before Judges JACKSON, BENCH, and GREENWOOD.

## OPINION

GREENWOOD, Judge.

¶ 1 Jason Miles Williams (Jason) appeals from the trial court's order granting Defendants', Rulon Jeffs (Rulon), President of the Fundamentalist Church of Jesus Christ of Latter Day Saints (the Church), Warren Jeffs (Warren), First Counselor in the Church, and the United Effort Plan Trust (the Trust), a charitable trust operated for and on behalf of the Church, motion for summary judgment. Jason argues that the trial court erred in granting summary judgment because genuine issues of material fact exist regarding his claims for alienation of affection and intentional infliction of emotional distress. We affirm.

## BACKGROUND

¶ 2 Jason and Suzanne Williams (Suzanne) were married on October 14, 1994 in Toquerville, Utah. When they married, Jason was 18 years old and Suzanne was 16 years old. The Williamses describe their decision to marry as "spur of the moment" with the actual decision being made just days before the wedding.

¶ 3 Initially, the Williamses lived in a trailer with Suzanne's sister in Centennial Park, Arizona. After a couple of months, the Williamses moved into their own apartment in Centennial Park. Six months later, they moved to an apartment in Hurricane, Utah, which they shared with Jason's brother and cousin. During this time, Suzanne was expecting their first child and was displeased with the living arrangement. Suzanne claims that while living in Centennial Park, she had "lots of fights" with Jason because she wanted to move back to Colorado City, Arizona to be near her family and friends.

¶ 4 In February 1996, the Williamses went back to Colorado City where they were "sealed" to each other in a religious ceremony performed by Rulon. However, Suzanne claimed that Jason's long absences from home while he worked in Las Vegas, Nevada along with other factors, created problems in the marriage. In July 1998, Suzanne raised the possibility of divorce to Jason because "she was tired of trying to make it work" and believed Jason did not live up to her family's expectations. Jason acknowledged he was aware that Suzanne was having an internal conflict about whether to stay married to him given his "apostate" status in the eyes of the Church.

¶ 5 In December 1998, Jason told Suzanne that he was moving to Virgin, Utah. Suzanne told Jason that she wanted to stay in Colorado City. After Suzanne made her final decision to divorce Jason, she met with her religious leaders for counsel. Jason admitted that Suzanne sought counsel from her reli-gious leaders of her own accord, and that her visit was unsolicited.

¶ 6 Suzanne filed for divorce in Arizona in December 1998. On March 27, 1999, while still legally married to Jason, Suzanne was "sealed" in a religious ceremony to another man. Jason believed his marriage to Suzanne was nearly perfect before the interference by Defendants.

¶ 7 Jason filed suit against Defendants seeking compensatory and punitive damages for alienation of affections and intentional infliction of emotional distress. Defendants filed a motion to dismiss the complaint under Rule 12(b)(6) of the Utah Rules of Civil Procedure, which the trial court granted as to Frank Jessop [1] (Suzanne's father), but denied as to the other Defendants. Defendants filed a petition for interlocutory appeal with the Utah Supreme Court, which was denied. Defendants filed a motion for summary judgment, arguing that Arizona law applied to Jason's alienation of affections claim, that Jason failed to meet the clear and convincing standard necessary to sustain his claim in Utah, and that Jason's intentional infliction of emotional distress claim should also be analyzed under a clear and convincing standard.

¶ 8 On December 12, 2000, after a hearing on the motion, the trial court granted Defendants' motion for summary judgment. However, the trial court failed to specify its ruling on the various grounds claimed for summary judgment as required under rule 52 of the Utah Rules of Civil Procedure.[2] This appeal followed.

## ISSUES AND STANDARD OF REVIEW

¶ 9 Jason raises the following issues on appeal: (1) Does Utah or Arizona law apply; (2) if Utah law applies, was summary judgment on the alienation of affections claim proper; and (3) was summary judgment on

---

1. Frank Jessop was named as a defendant in Plaintiff's original complaint.

2. Under rule 52 of the Utah Rules of Civil Procedure, the trial court is required to "issue a brief written statement of the ground for its decision on all motions granted under ... [rule] 56 ... when the motion is based on more than one ground." Utah R. Civ. P. 52(a).

the intentional infliction of emotional distress claim proper.[3]

¶ 10 Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Utah R. Civ. P. 56(c). " 'Because summary judgment by definition does not resolve factual issues, a challenge to summary judgment presents for review only questions of law. We review those conclusions for correctness, according no particular deference to the trial court.' " *Dikeou v. Osborn*, 881 P.2d 943, 945 (Utah Ct.App.1994) (citations omitted). Therefore, "we view the facts and all the inferences reasonably drawn from those facts in a light most favorable to the nonmoving party . . . ." *Hodges v. Howell*, 2000 UT App 171, ¶ 2, 4 P.3d 803.

## ANALYSIS

### I.   Choice of Law

¶ 11 Jason argues that under Utah's conflict of law rules, Utah law is the proper choice of law in deciding his claim for alienation of affections. Defendants argue that the Williamses' marriage was domiciled in Arizona; therefore, Arizona law applies. Moreover, because Arizona law does not recognize a claim for alienation of affections, Defendants contend the trial court properly granted summary judgment. We agree.

■■■ ¶ 12 Because Utah is the forum state, Utah's conflict of laws rules apply to determine which state's law are applicable. *See Shaw v. Layton Constr. Co.*, 872 P.2d 1059, 1063 (Utah Ct.App.1994). In tort actions, Utah applies the "most significant relationship" test as stated in Restatement (Second) of Conflict of Laws § 145. *See, e.g., Forsman v. Forsman*, 779 P.2d 218, 219–20 (Utah 1989) (applying the "most significant relationship" test to the doctrine of interspousal immunity). Utah has not addressed

choice of law rules applicable to claims of alienation of affections. However, Utah courts have relied on the Restatement (Second) of Conflict of Laws when determining which state's laws should apply to other tort claims. *See id.* at 219 (recognizing the application in tort claims of the "most significant relationship" analysis articulated in the Restatement (Second) of Conflict of Laws); *In re Estate of Waters*, 2001 UT App 164, ¶ 19, 29 P.3d 2 (same).

¶ 13 Section 145 of the Restatement (Second) of Conflicts of Laws states,

(1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the [choice of law principles stated in § 6]. ·

(2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

(a) the place where the injury occurred,

(b) the place where the conduct causing the injury occurred,

(c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and

(d) the place where the relationship, if any, between the parties is centered.

These contacts are to be evaluated according to their relative importance with respect to the particular issue.

Comment:

. . . .

c.   *Purpose of tort rule.* The purpose sought to be achieved by the relevant tort rules of the interested states, and the relation of these states to the occurrence and the parties, are important factors to be considered in determining the state of most significant relationship.

*See also Forsman*, 779 P.2d at 219.

■■ ¶ 14 The purpose of the alienation of affections tort in Utah is to protect the

---

**3.**   Plaintiff also argues that the trial court condoned Defendants' advocacy of illegal polygamous practices. However, because this issue was not raised in the trial court, we do not

address it. *See Ringwood v. Foreign Auto Works, Inc.*, 786 P.2d 1350, 1358–59 (Utah Ct.App.1990) (holding issue not raised in the trial court "cannot be considered for the first time on appeal").

sanctity of the marriage relationship. *See Norton v. Macfarlane,* 818 P.2d 8, 12 (Utah 1991) (stating that "[t]he gist of the tort is the protection of the love, society, companionship, and comfort that form the foundation of a marriage and give rise to the unique bonding that occurs in a successful marriage"). Defendants correctly argue that one of the interests the tort seeks to protect is a spouse's consortium interest. *See Hodges v. Howell,* 2000 UT App 171, ¶ 11, 4 P.3d 803 (stating that the "violation of the spouse's consortium interest is the main interest protected" in a claim of alienation of affections); *see also Wilson v. Oldroyd,* 1 Utah 2d 362, 267 P.2d 759, 763 (1954) (listing one of the elements for alienation of affections as "the loss of . . . consortium of the wife").

¶ 15 Given Utah's recognition of this tort's purpose to protect a spouse's consortium interest, Defendants cite *Doe v. Nevada Crossing, Inc.,* 920 F.Supp. 164 (D.Utah 1996), to urge this court to analyze Jason's alienation of affections claim the same way the *Doe* court analyzed a loss of consortium claim.

¶ 16 In *Doe,* the court had to determine which state's law should apply to a loss of consortium claim arising out of an assault on Utah residents in a hotel room in Nevada. The court noted that "[t]he substance of a claim for loss of consortium is the injury or breach of the spousal relationship." *Id.* at 165 (citations omitted). The court applied the most significant relationship test and determined that Utah had the most significant relationship to the parties because the "injury" to the consortium interest occurred in Utah since that was the situs of the marriage relationship. *See id.* at 167.

¶ 17 Because this court recognizes that the main interest protected in a claim for alienation of affections is a spouse's consortium interest, we find the analysis in *Doe* persuasive, and adopt it. We therefore apply the most significant relationship test, keeping in mind that the tort of alienation of affections seeks to protect the sanctity of the marriage relationship.

¶ 18 First, we must determine the place where the injury occurred. Jason argues that the injury occurred in Utah because all meetings with the Church authorities took place in Utah, the parties resided in Utah during part of their marriage, and the marriage ceremony took place in Utah. While it is true that the Williamses married and resided in Utah for short periods of time during their marriage, the couple made their home in Arizona. Arizona continued to be the matrimonial domicile and residence until the couple separated in December 1998. Arizona was also the state which assumed jurisdiction over the Williamses' divorce proceedings. Thus, under the first factor, we determine that the injury occurred in Arizona because Arizona was the situs of the marriage and where Jason would have experienced the alienation of his wife's affections.

¶ 19 Second, we must determine where the conduct causing the injury occurred. After Suzanne asked Jason for a divorce, she sought counsel from her religious leaders in Utah. It is this counsel that Jason complains alienated the affections of his wife. Therefore, the conduct complained of occurred in Utah where Suzanne received religious counsel.

¶ 20 Third, we consider the domicile, residence, place of incorporation, and place of business of the parties. Plaintiff and his wife resided and were domiciled in Colorado City, Arizona. However, Defendants' place of residence and incorporation is Utah. As the *Doe* court noted, the residence and domicile of the couple is "the more relevant situs since it is the place of the consortium of [the couple]." *Doe,* 920 F.Supp. at 167. Utah's interests "are non–existent in the personal relationship between two [Arizona] residents who are husband and wife living in [Arizona] and where [Arizona] is the most significant place of their interpersonal relationship." *Id.*

¶ 21 Fourth, we look to where the relationship between the parties was centered. Similar to the *Doe* court's determination regarding the center of the relationship for loss of consortium, the relationship for alienation of affections is centered where the marriage relationship was domiciled. We have already determined that this marriage relationship is domiciled in Arizona. Therefore, "defendants have no real interest in the

plaintiff's consortium nor does the State of [Utah]." *Id.*

¶ 22 Weighing all the factors, we determine that Arizona law applies because an "injury to the interspousal relationship is most significant where that [injury] occurs" and in a claim for alienation of affections the injury occurs where the matrimonial domicile and residence is located. *Id.* at 168 n. 2. Having determined that Arizona law applies, Plaintiff's alienation of affections claim fails because it is not a cause of action recognized in Arizona. *See* Ariz.Rev.Stat. § 25–341 (2001).

## II. Emotional Distress Claim

¶ 23 Defendants argue that Jason's intentional infliction of emotional distress claim was properly dismissed because the damages Jason suffered do not support a claim for emotional distress. In addition, Defendants argue that the emotional distress claim should be analyzed using the same clear and convincing standard of proof as Jason's alienation of affections claim, because alienation of affections is based on the same factual allegations and involves an alleged injury to the same protected interest. Jason asserts that Utah recognizes emotional distress as a separate and independent cause of action.[4]

¶ 24 To be entitled to damages for intentional infliction of emotional distress, Jason must establish that

"the defendant intentionally engaged in some conduct toward the plaintiff, (a) with the purpose of inflicting emotional distress, or, (b) where any reasonable person would have known that such would result; and his actions are of such a nature as to be considered outrageous and intolerable in that they offend against the generally accepted standards of decency and morality."

*Schuurman v. Shingleton,* 2001 UT 52, ¶ 23, 26 P.3d 227 (quoting *Samms v. Eccles,* 11 Utah 2d 289, 358 P.2d 344, 347 (1961)). The supreme court noted that " '[i]t is for the [trial] court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery.' " *Id.* (citation and alteration omitted). "[A]n act is not necessarily outrageous merely because it is tortious, injurious, or malicious, or because it would give rise to punitive damages, or because it is illegal." *Franco v. The Church of Jesus Christ of Latter-day Saints,* 2001 UT 25, ¶ 28, 21 P.3d 198 (citation, alteration, and quotations omitted).

¶ 25 In *Schuurman,* the plaintiff alleged that the defendant, a psychotherapist, was guilty of intentional infliction of emotional distress because "during the course of their relationship defendant made promises of marriage and financial security to plaintiff to manipulate and control her. Plaintiff also allege[d] that defendant made these promises with no intention of keeping them and with the knowledge that breaking such promises would cause plaintiff emotional distress." *Schuurman,* 2001 UT 52 at ¶ 4, 26 P.3d 227.

¶ 26 The supreme court upheld the summary judgment because "[h]owever unpleasant, the emotional distress that plaintiff alleges she suffered is indistinguishable from that commonly suffered by others when an intimate personal relationship fails. As such, it is not the type of emotional distress on which a claim for intentional infliction of emotional distress may be based." *Id.* at ¶ 25. Citing *Schuurman,* Defendants argue that Jason's claims in this case are indistinguishable from the emotional distress claims the *Schuurman* court found inadequate as a matter of law to support a claim for intentional infliction of emotional distress. We agree.

¶ 27 The emotional distress that Jason claims to have suffered is the loss of his wife, "the love and affection that he shared with her, as well as the future of his family." In addition, Jason claims that he was so distressed by Defendants' actions that he could not work for days. In *Schuurman,* the supreme court cited Restatement (Second) of Torts § 46, cmt. j, for the proposition that "[t]he law intervenes only where the distress inflicted is so severe that no reasonable [person] could be expected to endure it." *Id.* at

4. None of the parties to this appeal argue that Arizona law should apply to the claim for intentional infliction of emotional distress. We therefore analyze this issue under Utah case law.

¶ 23 (alterations in original). Jason's injuries do not rise to this level. As in *Schuurman*, Jason's alleged injuries are no different than the type normally suffered when a relationship fails. In addition, Jason concedes that Suzanne's decision to divorce him was made independently of advice from Defendants, albeit motivated to some extent by her religious views. Therefore, summary judgment was proper.[5]

## CONCLUSION

¶ 28 Because Jason's matrimonial domicile and residence was Arizona, Arizona law applies to his tort claim of alienation of affections. However, Arizona does not recognize a claim for alienation of affections; therefore, Jason's claim fails. In addition, Jason failed to demonstrate how the injuries he claims to have suffered rise to the level of being so "extreme and outrageous as to permit recovery" for intentional infliction of emotional distress.[6] Therefore, we affirm.

¶ 29 WE CONCUR: NORMAN H. JACKSON, Presiding Judge, and RUSSELL W. BENCH, Judge.

---

5. Because we find that the trial court's grant of summary judgment was correct, we do not review Defendants' claim that the emotional distress claim should be analyzed using the clear and convincing standard of proof.

6. Because of the resolution on this issue, it is unnecessary for this court to address whether clergy privilege provides immunity for Defendants under a freedom of religion theory as claimed by Defendants. *See Franco v. The Church of Jesus Christ of Latter-day Saints*, 2001 UT 25, ¶ 30, 21 P.3d 198 (citing *Hoyle v. Monson*, 606 P.2d 240, 242 (Utah 1980) ("[I]t is a 'fundamental rule' that constitutional questions should not be reached if the merits of the case can be determined on other than constitutional grounds.")).