# ILLINOIS OFFICIAL REPORTS

## Appellate Court

*Murphy v. Colson*, 2013 IL App (2d) 130291

| | |
|---|---|
| Appellate Court Caption | DEAN MURPHY, Plaintiff-Appellant, v. DAN COLSON, Defendant-Appellee. |
| District & No. | Second District<br>Docket No. 2-13-0291 |
| Filed | October 24, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action for alienation of affection, criminal conversation, and intentional infliction of emotional distress, the trial court properly entered partial summary judgment for defendant based on the finding that the statutory exclusion of certain noneconomic compensatory damages under the Alienation of Affections Act and the Criminal Conversation Act is constitutional. |
| Decision Under Review | Appeal from the Circuit Court of Boone County, No. 10-L-49; the Hon. Brendan A. Maher, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Robert C. Pottinger and Jody L. Booher, both of Barrick, Switzer, Long, Balsley & Van Evera, LLP, of Rockford, for appellant.

Andrew T. Smith and Charles P. Alexander, both of Cicero, France, Barch & Alexander, P.C., of Rockford, for appellee.

Panel

JUSTICE JORGENSEN delivered the judgment of the court, with opinion.

Justices Hudson and Birkett concurred in the judgment and opinion.

## OPINION

¶ 1      Plaintiff, Dean Murphy, filed a complaint against defendant, Dan Colson, and the trial court granted defendant's motion for partial summary judgment, finding constitutional the statutory exclusion of certain noneconomic compensatory damages under the Alienation of Affections Act (740 ILCS 5/1 *et seq.* (West 2008)) and the Criminal Conversation Act (740 ILCS 5/50 *et seq.* (West 2008)). Upon the court's Rule 304(a) finding (Ill. S. Ct. R. 304(a) (eff. Sept. 20, 2006)), plaintiff appealed. For the reasons that follow, we affirm.

¶ 2      <center>I. BACKGROUND</center>

¶ 3      In 1991, plaintiff, a dentist, married Dawn Murphy. They had six children together, and they raised their family in the Catholic faith. According to the complaint, in August 2008, Dawn hired defendant as her personal trainer at the Cross Fit gym. Defendant knew that Dawn was married to plaintiff. Nevertheless, in December 2008, defendant began a course of conduct that included purchasing gifts for Dawn, taking Dawn on dates, and engaging in sexual relations with Dawn.

¶ 4      In November 2009, Dawn petitioned for a divorce from plaintiff. In September 2010, the court granted dissolution on the ground of irreconcilable differences.

¶ 5      In November 2010, plaintiff filed a three-count civil complaint against defendant for: (1) alienation of affection; (2) criminal conversation; and (3) intentional infliction of emotional distress (intentional infliction of emotional distress is not at issue in this appeal).

¶ 6      In December 2011, plaintiff amended his complaint. As to damages, plaintiff broadly alleged that he cannot marry again, because to do so would be in direct contradiction to his Catholic faith. Specifically, plaintiff sought damages for: (a) marital counseling expenses; (b) loss of value of his dental practice (presumably through the distribution of property in the divorce case); (c) loss of value of a second dental business (again, presumably through the distribution of property in the divorce case); (d) maintenance payments to Dawn as ordered

<center>-2-</center>

in the divorce case; (e) loss of an individual retirement account in his name (again, presumably through the distribution of property in the divorce case); (f) loss of Dawn's business referrals to his dental practice; (g) loss of income due to time spent away from work to address the family problems; (h) residential rental expenses during the divorce proceedings; (i) guardian *ad litem* and mediator expenses; (j) loss of consortium; (k) loss of society; (l) mental anguish; (m) injured feelings; (n) shame, humiliation, sorrow, and mortification; (o) defamation and injury to his good name and character; and (p) dishonor to his family.[1]

¶ 7    As is at issue in this appeal, plaintiff also amended his complaint to seek a declaration that the statutory exclusion of certain noneconomic compensatory damages, under the Alienation of Affections Act and the Criminal Conversation Act, is unconstitutional.[2] The nature of the exclusion and the constitutionality arguments will be set forth in detail in our analysis section.

¶ 8    In May 2012, plaintiff filed a motion for partial summary judgment, seeking a declaration of unconstitutionality as to the statutory exclusion. The trial court denied plaintiff's motion. In ruling, the court noted that plaintiff had set forth many constitutional arguments but had developed only those concerning the separation of powers clause and the special legislation clause (and, as a component of that argument, the equal protection clause).

¶ 9    In November 2012, defendant filed his own motion for partial summary judgment, seeking a declaration that the statutory exclusion was indeed constitutional. The trial court granted defendant's motion and entered a Rule 304(a) finding. This appeal followed.

¶ 10                              II. ANALYSIS

¶ 11                      A. Overview of Plaintiff's Argument

¶ 12    Plaintiff argues that the trial court erred in granting summary judgment to defendant and declaring constitutional the statutory exclusion of certain noneconomic compensatory damages under the Alienation of Affections Act and the Criminal Conversation Act (the Acts). Plaintiff accepts that the Acts' exclusion of punitive damages is constitutional. Of course, we review *de novo* both an order granting summary judgment and the question of a statute's constitutionality. *Lebron v. Gottlieb Memorial Hospital*, 237 Ill. 2d 217, 227 (2010) (constitutionality); *Hall v. Henn*, 208 Ill. 2d 325, 328 (2003) (summary judgment). As plaintiff agrees, a finding on the issue of constitutionality controls the propriety of the summary judgment ruling, and so we focus our analysis there.

¶ 13    Specifically, plaintiff contends that the statutory exclusion of the noneconomic compensatory damages at issue here is unconstitutional in that it: (1) violates the separation

---

[1]In his brief, plaintiff discusses certain damages stricken by the trial court. However, those damages were stricken from only the initial complaint. The trial court has not (yet) stricken damages from the amended complaint. In any case, an *application* of the statutory exclusion is not at issue in this case. Rather, the constitutionality of the exclusion itself is at issue.

[2]Defendant responded with affirmative defenses and a counterclaim not at issue here.

of powers clause (Ill. Const. 1970, art. II, § 1); (2) is special legislation (Ill. Const. 1970, art. IV, § 13) (and, as a component of that, denies plaintiff his right to equal protection (Ill. Const. 1970, art. I, § 2)); (3) denies him his right to complete remedy (Ill. Const. 1970, art. I, § 12); (4) denies him his right to a jury trial (Ill. Const. 1970, art. I, § 13); and (5) denies him his right to due process (Ill. Const. 1970, art. I, § 2). However, plaintiff develops argument on only the first two of these claims, and therefore he forfeits the remaining three claims. See Ill. S. Ct. R. 341(h)(7) (eff. Feb. 6, 2013).

¶ 14      Essentially, plaintiff acknowledges that, in *Siegall v. Solomon*, 19 Ill. 2d 145, 148-51 (1960), the supreme court expressly upheld the constitutionality of the Acts' exclusion of certain noneconomic compensatory damages. However, he argues that *Siegall* has been implicitly overruled by subsequent supreme court rulings, such as *Best v. Taylor Machine Works*, 179 Ill. 2d 367 (1997) (personal injury), and *Lebron*, 237 Ill. 2d 217 (medical malpractice), which held unconstitutional the caps on noneconomic compensatory recovery in the causes of action at issue there. Plaintiff further acknowledges that *Lebron* specifically distinguished itself from *Siegall*, but he contends that the distinction was not wholly sound. For the reasons that follow, we do not find *Best* or *Lebron* controlling, and we reject plaintiff's separation of powers and special legislation arguments.

¶ 15                                   B. History of the Acts

¶ 16      We first examine how the Acts' exclusion of certain noneconomic compensatory damages came to be. The causes of action at issue here, alienation of affections and criminal conversation, arose in common law and, along with breach of contract to marry, have been treated "indistinguishabl[y]" (*Siegall*, 19 Ill. 2d at 149), at least on questions of statutory exclusions of certain types of damages. Still, for context, we set forth the elements comprising each respective common-law cause of action. To sustain a cause of action for alienation of affection, the plaintiff must allege and prove: (a) love and affection of the spouse for the plaintiff; (b) overt acts, conduct, or enticement on the part of the defendant causing these affections to depart; and (c) actual damages. *Kniznik v. Quick*, 130 Ill. App. 2d 273, 276 (1970). The tort of criminal conversation "consists of a violation of a spouse's right to the exclusive privilege of sexual intercourse, and it is thus a common law tort claim[ ] for adultery." 21 Ill. L. and Prac., *Husband & Wife* § 5 (2007). To sustain a cause of action for criminal conversation, the plaintiff must allege and prove: (a) a valid marriage between spouses; and (b) the occurrence of sexual intercourse between the plaintiff's spouse and the defendant. *Id.* (citing *Hardy v. Bach*, 173 Ill. App. 123 (1912)).

¶ 17      In 1935, the Illinois legislature abolished the aforementioned causes of action with what became known as the "Heart Balm" Act. Ill. Rev. Stat. 1943, ch. 38, ¶¶ 246.1, 246.2 (officially titled "An Act in relation to certain causes of action conducive to extortion and blackmail, and to declare illegal, contracts and acts made and done in pursuance thereof"). The Heart Balm Act declared it unlawful for any person to file or threaten to file a cause of action for alienation of affections, criminal conversation, or breach of promise to marry. The legislature's stated purpose in abolishing the aforementioned causes of action was that they were "conducive to extortion and blackmail." *Id.*

¶ 18	In 1946, the supreme court, in *Heck v. Schupp*, 394 Ill. 296, 299 (1946), declared unconstitutional the Heart Balm Act's abolishment of the aforementioned causes of action. The court held, *inter alia*, that the Heart Balm Act violated article II, section 19, of the Illinois Constitution of 1870, which provided that " 'every person ought to find a certain remedy in the laws for all injury and wrongs which he may receive in his person, property, or reputation.' " *Id.* at 299 (quoting Ill. Const. 1870, art. II, § 19).[3] The court reasoned that "[t]he contract of marriage *** involv[es] civil rights just as other contracts involve such rights, and no reason appears why, under section 19 of article II of our constitution, such rights should not have their day in court." *Id.* at 300. Additionally, the court questioned the Heart Balm Act's stated purpose, noting that almost any common-law cause of action could be used by extortionists and blackmailers. *Id.*

¶ 19	In 1947, presumably in response to *Heck*, the Illinois legislature passed three companion acts: the Alienation of Affections Act (now 740 ILCS 5/1 *et seq.* (West 2008)), the Breach of Promise Act (also known as Agreement to Marry Act) (now 740 ILCS 15/1 *et seq.* (West 2008)), and the Criminal Conversation Act (now 740 ILCS 50/1 *et seq.* (West 2008)). For the purposes of this appeal, of course, we are concerned with the Alienation of Affections Act and the Criminal Conversation Act. The Acts contain parallel language, and we quote below that from the Alienation of Affections Act.

¶ 20	Section 1 of the Alienation of Affections Act provides:

"It is hereby declared, as a matter of legislative determination, that the remedy heretofore provided by law for the enforcement of the action for alienation of affections has been subjected to grave abuses and has been used as an instrument for blackmail by unscrupulous persons for their unjust enrichment, due to the indefiniteness of the damages recoverable in such actions and the consequent fear of persons threatened with such actions that exorbitant damages might be assessed against them. It is also hereby declared that the award of monetary damages in such actions is ineffective as a recompense for genuine mental or emotional distress. Accordingly, it is hereby declared as the public policy of the state that the best interests of the people of the state will be served by limiting the damages recoverable in such actions and by leaving any punishment of wrongdoers guilty of alienation of affections to proceedings under the criminal laws of the state, rather than to the imposition of punitive, exemplary, vindictive, or aggravated damages in actions for alienation of affections. Consequently, in the public interest, the necessity for the enactment of this chapter is hereby declared as a matter of legislative determination." 740 ILCS 5/1 (West 2008).

¶ 21	Section 2 of the Alienation of Affections Act provides:

"The damages to be recovered in any action for alienation of affections shall be limited to actual damages sustained as a result of the injury complained of." 740 ILCS 5/2 (West 2008).

¶ 22	Section 3 of the Alienation of Affections Act provides:

---

[3]The *Heck* court also addressed problems with the title of the Heart Balm Act.

"No punitive, exemplary, vindictive or aggravated damages shall be allowed in any action for alienation of affections." 740 ILCS 5/3 (West 2008).

¶ 23    Section 4 of the Alienation of Affections Act provides:

"In determining the damages to be allowed in any action for alienation of affections, none of the following elements shall be considered: the wealth or position of defendant or the defendant's prospects of wealth or position; mental anguish suffered by plaintiff; any injury to plaintiff's feelings; shame, humiliation, sorrow or mortification suffered by plaintiff; defamation or injury to the good name or character of plaintiff or his or her spouse resulting from the alienation of affections complained of; or dishonor to plaintiff's family resulting from the alienation of affections." 740 ILCS 5/4 (West 2008).

¶ 24    In other words, while each act expressly limits the damages to actual (*i.e.*, compensatory rather than punitive) damages (740 ILCS 5/2 (West 2008); 740 ILCS 50/2 (West 2008)), each act does not guarantee compensation for *all* actual damages. To the contrary, each act excludes certain noneconomic compensatory damages, stating that "monetary damages in such actions [are] ineffective as a recompense for genuine mental or emotional distress" (740 ILCS 5/1 (West 2008); 740 ILCS 50/1 (West 2008)) and stating that the plaintiff's resulting mental anguish, injury to feelings, shame, humiliation, sorrow, mortification, defamation or dishonor cannot be considered in determining damages (740 ILCS 5/4 (West 2008); 740 ILCS 50/4 (West 2008)).

¶ 25    In 1958, with one justice dissenting, the supreme court, in *Smith v. Hill*, 12 Ill. 2d 588 (1958) (abstract of op.), upheld the constitutionality of the Breach of Promise Act's express exclusion of "punitive, exemplary, vindictive, [and] aggravated" damages.

¶ 26    In 1960, the supreme court, in *Siegall*, upheld the constitutionality of the Alienation of Affections Act's limitations on recoverable damages, including the (1) limitation to actual damages (now 740 ILCS 5/2 (West 2008)); (2) exclusion of punitive, exemplary, vindictive, and aggravated damages (now 740 ILCS 5/3 (West 2008)); and (3) prohibition of consideration of the enumerated elements, such as the defendant's wealth or position and the plaintiff's resulting mental anguish, injury to feelings, shame, humiliation, sorrow, mortification, defamation, or dishonor (now 740 ILCS 5/4 (West 2008)). *Siegall*, 19 Ill. 2d at 148-51.

¶ 27    In *Siegall*, the plaintiff contended that statutory limitations on recoverable damages violated section 19 of article II of the Illinois Constitution of 1870, which, as noted, provided that "every person ought to find a certain remedy in the laws for all injury and wrongs which he may receive in his person, property, or reputation." *Id.* at 148 (quoting Ill. Const. 1870, art. II, § 19); *Heck*, 394 Ill. at 299-300 (discussing section 19). The plaintiff argued that the legislature's 1947 enactment of the Alienation of Affections Act, setting forth limitations on recoverable damages, did *not* correct the problems concerning the right to a remedy that had caused the *Heck* court to declare the Heart Balm Act unconstitutional. *Siegall*, 19 Ill. 2d at 148. The plaintiff reasoned:

"[T]he very foundation of the cause of action for alienation of affections is mental anguish, shame, humiliation, injured feelings, as well as defamation of name and character of a plaintiff or his family, and *** the 1947 act, by expressly removing such

-6-

elements of damage, leaves only a nominal cause of action without possibility of recovering damages. This result *** circumvents the decision in [*Heck*] and renders the present act subject to constitutional infirmities in that it violates section 19 *** and destroys vested rights and impairs the obligation of contract ***." *Siegall*, 19 Ill. 2d at 148-49.

¶ 28     The *Siegall* court rejected the plaintiff's argument. The court noted that, in *Smith*, it had addressed "an almost identical act" and found that "a statute which does not prohibit [or abolish] an action, but merely denies certain damages as a basis for recovery, could not be in contravention of section 19." *Id.* at 149. As to the plaintiff's reference to allegedly vested rights, the court noted that there is "no vested right in any plaintiff to exemplary, punitive, vindictive[,] or aggravated damages leaving the legislature free to restrict or deny such damages at its pleasure." *Id.* (citing *Smith*, 12 Ill. 2d 588).

¶ 29     Moreover, as pertaining to the special case of marriage and any accompanying vested rights and contractual obligations, the *Siegall* court noted:

"[T]he modern view [is] that [the] *rights of a husband in his wife's affections and society are not property* within the due process clause, so as to prevent a State's regulation and control of such rights ***. ***

        ***

        *** While the marriage contract is properly regarded *** as a civil contract for some purposes, it is at the same time a contract which has always been regarded as subject to the plenary control of the legislature, and subject to controls based upon principles of public policy ***. [Citations.] Indeed, it has been expressly held that marriage is not a contract within the constitutional provision prohibiting the impairment by a State of the obligation of contract, inasmuch as *the rights, duties, and obligations of the parties do not rest upon the agreement of the parties alone, but upon the general law of the State*, statutory and common, which defines and prescribes those rights, duties[,] and obligations. [Citations.]

        Actions for alienation of affections are considered as incident to, or as arising from, the marriage relation, and are likewise subject to the basic power of the legislature to enact reasonable police regulations for the public welfare." (Emphases added.) *Id.* at 149-50.

¶ 30     Before concluding, the *Siegall* court summarily rejected, as having been decided in *Smith*, the plaintiff's remaining arguments, holding that the Alienation of Affections Act's limitations did *not*: (1) violate the separation of powers clause by invading the province of the jury; or (2) constitute special legislation by favoring one group of persons over another group of similarly situated persons. *Id.* at 150-51.

¶ 31     After the *Siegall* court upheld the constitutionality of the Alienation of Affections Act's limitations on damages, appellate courts applied the limitations in a series of cases, developing a body of law on what types of damages are not recoverable under the statutory exclusion. See, *e.g.*, *Coulter v. Renshaw*, 94 Ill. App. 3d 93, 95-96 (1981) (damages for loss of spouse's monthly income recoverable; damages for loss of consortium, *i.e.*, loss of

companionship, felicity, and sexual intercourse, *not* recoverable);[4] *Wheeler v. Fox*, 16 Ill. App. 3d 1089, 1093 (1974) (damages for mental illness and lost occupational earnings not recoverable);[5] *Kniznik*, 130 Ill. App. 2d at 279 (damages for mental illness and lost occupational earnings not recoverable).[6,7] Again, these cases merely applied the limitations. They did not revisit the previously settled constitutional challenges.

¶ 32                                    C. Separation of Powers

¶ 33     Plaintiff argues that *Siegall* has been implicitly overruled by subsequent supreme court rulings that discuss in more detail the two constitutional arguments that *Siegall* summarily rejected: separation of powers and special legislation. Here, we address the separation of powers argument. The separation of powers clause prohibits one branch of government from exercising the powers properly belonging to another. Ill. Const. 1970, art. II, § 1. Plaintiff believes that the *Lebron* separation of powers analysis can be applied to the Alienation of Affections Act and the Criminal Conversation Act. We disagree.

¶ 34     The *Lebron* court, relying on judicial *dicta* in *Best*, held unconstitutional as a violation of separation of powers the statute that capped noneconomic damages in medical malpractice actions. *Lebron*, 237 Ill. 2d at 250. The *Lebron* court noted that this cap trumped a jury's deliberative process in assessing damages and required the reduction of any noneconomic

---

[4]The *Coulter* court also ruled other damages not recoverable, such as attorney fees from a dissolution case and the loss of (presumably housekeeping) services, for reasons other than the statutory exclusion, such as the inapplicability of the rules in dissolution actions to alienation of affections suits and the plaintiff's failure to adequately plead an actual pecuniary loss. *Id.*

[5]The *Wheeler* court's recitation of nonrecoverable damages under the statutory exclusion was judicial *dicta*. Its primary basis for reversing the trial court was that there was no evidence to support the first element of an action for alienation of affections–that the plaintiff had the spouse's love and affection to lose. *Id.* at 1092. Additionally, the *Wheeler* court cited without discussing *Kniznik*'s recitation, which was problematic for its own reasons, as discussed in the next footnote. *Id.* at 1093. Finally, the *Wheeler* court also ruled other damages not recoverable, such as loss of consortium, loss of health, unemployment, and loss of the spouse's (presumably housekeeping) services, due to reasons other than the statutory exclusion, such as deficiencies in the pleadings.

[6]Similarly, the *Kniznik* court's recitation of nonrecoverable damages was judicial *dicta*. Its primary basis for affirming the dismissal of the action for alienation of affections was due to the conclusory nature of the pleadings. *Id.*

[7]The parties also cite and discuss *Lo Cascio v. Kiousis*, 9 Ill. App. 3d 919 (1973) (abstract of op.), but, as only the abstract has been published, it is impossible to discern the basis upon which the damages were deemed nonrecoverable, *i.e.*, whether the denial was based on the statutory exclusion or not. At least some of the damages facially appear to have been denied for reasons aside from the statutory exclusion (denial of attorney fees from a dissolution case, based on the inapplicability of the rules in dissolution actions to alienation of affections suits, and denial of the cost of child support, as public policy demanded support of the children).

damages in excess of the cap, irrespective of the particular facts and circumstances. *Id.* at 238. The statute, therefore, acted as an unconstitutional "legislative remittitur" in that it " 'unduly encroache[d] upon the fundamentally judicial prerogative of determining whether a jury's assessment of damages is excessive within the meaning of the law.' " *Id.* (quoting *Best*, 179 Ill. 2d at 414). Interestingly, the dissent noted that "[n]othing in the majority's separation of powers analysis would preclude" the legislature from "eliminating *all* non-economic damages" in an effort to cut healthcare costs. (Emphasis in original.) *Id.* at 283 (Karmeier, J., concurring in part and dissenting in part, joined by Garman, J.). In the dissent's view, the potential for some recovery of noneconomic damages was better than no potential recovery. *Id.*

¶ 35    As recognized by the *Lebron* dissent, a damages cap is not necessarily analogous to a damages exclusion. Therefore, our case, which involves an exclusion of certain noneconomic compensatory damages, is not perfectly analogous to *Lebron*, which involved a cap. The *Lebron* court found that the cap invaded the province of the court by encroaching on its traditional power to exercise a remittitur on the jury's award. *Id.* at 238. Remittitur allows the court to *reduce* a jury's award where it falls outside the range of fair and reasonable compensation or results from passion or prejudice or where it is so large that it shocks the judicial conscience. *Id.* at 234. Here, such judicial authority is not at issue. In the face of the exclusion, the jury would not have been able to assess in the first place the noneconomic damages enumerated in section four of each Act.

¶ 36    More importantly, *Lebron* cannot be said to have implicitly overruled *Siegall*, because the *Lebron* court expressly distinguished its case from *Siegall*. *Id.* at 246. Plaintiff complains that the distinction was imprecise, because the court commented that *Siegall* involved a ban on punitive damages, not a cap on noneconomic compensatory damages. *Id.* As plaintiff notes, *Siegall* involved a ban on punitive damages *and* certain noneconomic compensatory damages. However, the *Lebron* court's statement that *Siegall* did not involve a cap is accurate. In any case, the point is that the supreme court was presented with its prior ruling in *Siegall* and expressly stated that its invalidation of the medical malpractice damages cap did not undermine its precedents. *Id.*

¶ 37                                    D. Special Legislation

¶ 38    Alternatively, plaintiff argues that the *Best* special legislation analysis can be applied to the instant case. For the reasons that follow, we disagree.

¶ 39    A special legislation challenge generally is evaluated according to the same standards as an equal protection challenge. *Best*, 179 Ill. 2d at 393. The special legislation clause states:

> "The General Assembly shall pass no special or local law when a general law is or can be made applicable. Whether a general law is or can be made applicable shall be a matter for judicial determination." Ill. Const. 1970, art. IV, § 13.

The legislature may not confer a special benefit or privilege upon one group and exclude others that are similarly situated unless there is a rational basis to do so. *Best*, 179 Ill. 2d at 391. In other words, the special legislation clause prevents the legislature from making classifications that arbitrarily discriminate in favor of a select group. *Big Sky Excavating, Inc.*

*v. Illinois Bell Telephone Co.*, 217 Ill. 2d 221, 235 (2005). To show a violation of the special legislation clause, two prongs must be met: (1) the statutory classification discriminates in favor of a select group to the exclusion of those that are similarly situated; and (2) the classification is arbitrary. *Id.*

¶ 40    Plaintiff notes that plaintiffs in other tort actions, such as for intentional infliction of emotional distress, invasion of privacy, and damage to reputation, are not restricted in their ability to recover noneconomic compensatory damages. However, even if we accept that plaintiff is similarly situated with plaintiffs in other types of tort actions, which we do not, plaintiff cannot meet the second prong. The statutory exclusion here is not arbitrary. In *Siegall*, the supreme court discussed in detail the rationale for treating those torts that arise out of the marriage contract as a special group. *Siegall*, 19 Ill. 2d at 149-50 (as discussed above in paragraph 30). Plaintiff does not address any of the *Siegall* court's statements concerning the special nature of these marriage torts. In fact, as no supreme court case (or any case) since *Siegall* has called into question its rationale on this point, we are bound to uphold it.

¶ 41    We acknowledge plaintiff's point that one of the Acts' stated rationales for excluding damages is arguably quite weak (*i.e.*, that these torts are especially susceptible to being "used as an instrument for blackmail by unscrupulous persons for their unjust enrichment, due to the indefiniteness of the damages recoverable in such actions and the consequent fear of persons threatened with such actions that exorbitant damages might be assessed against them" (740 ILCS 5/1 (West 2008); 740 ILCS 50/1 (West 2008))). As plaintiff notes, other torts, again such as intentional infliction of emotional distress, invasion of privacy, and damage to reputation, are also susceptible to being used for blackmail and might result in damages that are difficult to calculate, yet plaintiffs in those causes of action are not restricted in their ability to recover noneconomic compensatory damages. Still, the weakness of one stated rationale is not enough to rebut the presumption of constitutionality, nor is it enough to break from the authority of the supreme court.

¶ 42    The parties have focused their arguments on the second prong, and our above analysis on that point is dispositive. However, we take time to note that plaintiff has not convinced us that he has met the first prong, *i.e.*, that the statutory exclusion discriminates against him as compared to similarly situated individuals. To determine whether one person or group is similarly situated to another, one must look to the purpose of the law. *People v. Masterson*, 2011 IL 110072, ¶ 25. If, as stated in *Heck*, a purpose of the common-law marriage torts is to validate and/or protect the marital and familial interests accompanying the institution of marriage, the collective of similarly situated individuals are those whose marital and familial interests are at stake. Here, the imposition of the statutory exclusion does not discriminate against any one person or group within the larger collective of those similarly situated individuals whose marital and familial interests are at stake. Again, plaintiff notes that plaintiffs in other tort actions, such as for intentional infliction of emotional distress, invasion of privacy, and damage to reputation, are not restricted in their ability to recover noneconomic compensatory damages. However, this mere assertion does not establish that he is similarly situated to plaintiffs in those other tort actions. Case law does not support the presumption that a party in one cause of action is similarly situated to a party in a different

cause of action. See, *e.g.*, *Montgomery v. Roudez*, 156 Ill. App. 3d 262, 269 (1987) (parties pursuing a finding of fitness under the Juvenile Court Act are not similarly situated to parties pursuing a finding of fitness under the Illinois Marriage and Dissolution of Marriage Act). Indeed, the *Best* court did not compare plaintiffs in one tort to plaintiffs in another tort who had endured a similar level and type of harm. *Best*, 179 Ill. 2d 367. Rather, the *Best* court held that the damages cap prevented plaintiffs who had been greatly harmed from being fully compensated but did not prevent plaintiffs who had been minimally harmed from being fully compensated. *Id.* at 406.

¶ 43     We raise these concerns, but we leave them for another day. For now, we resolve this case by affirming the constitutionality of the statutory exclusion of damages at issue.


¶ 44                              III. CONCLUSION
¶ 45     The trial court's grant of partial summary judgment is affirmed.


¶ 46     Affirmed.