An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-1014
NORTH CAROLINA COURT OF APPEALS

Filed: 6 May 2014

CAROL MONSOUR PURYEAR,
      Plaintiff-Appellee,

      v.                                    Wake County
                                            No. 09 CVS 825
BETTY CARLTON PURYEAR (formerly
BEVERLY CARLTON DEVIN),
      Defendant-Appellant.


      Appeal by Defendant from judgment entered 15 May 2013 by Judge Carl R. Fox in Superior Court, Wake County.  Heard in the Court of Appeals 18 February 2014.


      *Gailor Hunt Jenkins Davis & Taylor, P.L.L.C., by Stephanie T. Jenkins, Jaime H. Davis, and Carrie B. Tortora, for Plaintiff-Appellee.*

      *Woodruff Law Firm, PA, by Carolyn J. Woodruff and Jessica S. Bullock, for Defendant-Appellant.*


      McGEE, Judge.


      Carol Monsour Puryear ("Plaintiff") and Donald Puryear ("Mr. Puryear") were married on 23 January 1994 and divorced on 23 January 2009.  Mr. Puryear had been engaged to Betty Carlton Puryear (formerly Beverly Carleton Devin) ("Defendant") when the two were in their twenties, but this engagement was broken and

Mr. Puryear and Defendant did not remain in contact with each other. Mr. Puryear's father died and a funeral was held for him on 17 July 2007. Defendant attended the funeral, talked with Mr. Puryear, and gave him her telephone number. At some point not long after 17 July 2007, Mr. Puryear called Defendant, and they eventually began an affair. According to Plaintiff: "It was within a month of [Mr. Puryear's father's] passing that my husband had the affair and we parted ways." Plaintiff and Mr. Puryear separated in early November 2007 and were divorced on 23 January 2009.

Plaintiff filed her "Complaint for Alienation of Affections and Criminal Conversation" on 13 January 2009. Defendant answered Plaintiff's complaint on 7 May 2009, and included counterclaims and a motion to dismiss. At the time, Defendant was represented by Jerry W. Leonard ("Mr. Leonard"). Discovery began, and Plaintiff filed a motion to compel on 4 September 2009. Plaintiff alleged that Defendant had failed to produce responses to proper discovery requests, and requested that the trial court order Defendant to comply, and to pay attorney's fees associated with Defendant's non-compliance. By order entered 9 February 2010, *nunc pro tunc* 26 January 2010, the trial court ordered Defendant to comply with certain discovery requests, and further ordered that Defendant pay $1,625.00 in

attorney's fees. Mr. Leonard filed a motion on 23 February 2010 to withdraw as Defendant's counsel. Mr. Leonard recited the following reasons in his motion:

> As of the last 60 days, Counsel has not been able to communicate with the Defendant in any manner except on January 26, 2010, when Defendant indicated she would make efforts to comply with the advice of Counsel and the Orders of this Court. Despite repeated efforts to contact Defendant since that date, Defendant has refused to communicate with her Counsel regarding important matters before this Court.
>
> 3. On February 22, 2010, Counsel spoke to one of Defendant's family member[s], who informed Counsel that Defendant had indicated that she was not going to participate in the defense of this action and the prosecution of her counter claims.

Mr. Leonard moved to withdraw Defendant's answer, counterclaims, and motion to dismiss on 18 March 2010. Plaintiff filed a motion to dispense with a mediated settlement conference, motion for contempt, and motion for sanctions requiring Defendant to provide discovery and pay attorney's fees on 9 April 2010, alleging Defendant had failed to comply with the prior order, or to otherwise participate in the lawsuit in any meaningful way. Plaintiff's motion to dispense with the mediated settlement conference was granted by order entered 9 April 2010, in part because of Defendant's "unwillingness to participate in this case[.]" A hearing was conducted on 19 April 2010 to address

Plaintiff's motions for contempt and sanctions, and Mr. Leonard's motion to withdraw. Mr. Leonard appeared at the hearing and agreed that, because Defendant had withdrawn her answer and her counterclaims, entry of default was appropriate and the matter should go forward solely on the question of damages. Mr. Leonard also agreed that Plaintiff should receive attorney's fees for the extra work Plaintiff's attorneys had performed in attempting to obtain discovery from Defendant. At the end of that hearing, the trial court stated it would allow Mr. Leonard's motion to withdraw, and grant Plaintiff's motions for contempt and sanctions in the form of a $1,900.00 award for attorney's fees. The order allowing Mr. Leonard to withdraw as Defendant's counsel was entered on 23 April 2010, and the order decreeing Defendant in civil contempt and ordering Defendant to pay $1,900.00 in attorney's fees was entered on 11 June 2010. Order for entry of default was entered on 13 September 2010.

Plaintiff filed a motion to show cause on 5 January 2011, complaining that Defendant had failed to pay the $1,900.00 ordered by the trial court. The trial court entered an order to appear and show cause on 6 January 2011, and ordered Defendant to appear on 31 January 2011 and "show cause, if any, why the [c]ourt should not enter an order holding you in civil or criminal contempt." That order further instructed Defendant that

her "failure to appear as ordered may result in the issuance of an Order for Arrest." The hearing was conducted on 31 January 2011, but Defendant did not appear and had no attorney of record. At that hearing, Plaintiff's attorney explained,

> we have the show cause order and she was not here, Judge Fox said that, you know, he was tired of her essentially thumbing her nose at the Court, and that if she didn't show up for this hearing, that he was going to issue an order for her arrest.

Defendant does not include in the record a transcript of the hearing that resulted in the entry of the 6 January 2011 show cause order. Defendant apparently had sent a check in the amount of $1,900.00 to the clerk's office approximately two weeks earlier, with no additional correspondence. The clerk's office had apparently informed Defendant that she was still required to attend the hearing. The trial court entered an order on 2 March 2011 finding Defendant in contempt for "her failure to comply with the Court's Order to Show Cause." The trial court also ordered that the matter was "reserved for further Orders of this Court, including [Plaintiff's] attorney fees in prosecuting this Contempt Order." Following the hearing, on 17 February 2011, but before the entry of the 2 March 2011 order, attorney Mary Gurganus ("Ms. Gurganus") filed notice of limited appearance "as counsel of record for Defendant . . . in her Order to Show Cause regarding Payment of Attorney's

Fees."

A bench trial on damages was held on 14 March 2011. Plaintiff testified and was represented by counsel. The trial court made an unchallenged finding of fact that Defendant "came to the Wake County Courthouse on the day of the [damages trial,]" but

> refused to appear in open court and represent herself. Instead, . . . Defendant had an attorney, Mary Gurganus, inquire as to whether she would be held in contempt for failing to appear at this hearing. Upon learning that she could waive her appearance, . . . Defendant and Ms. Gurganus left the floor prior to this hearing.

The trial court stated the following at the end of the proceeding:

> I'm offended that given this circumstance and given how much I stressed the importance of being here, that she was in this courthouse, in this courthouse, feet from that door and chose not to come and sit in that seat, and say absolutely nothing.

Attorney Carolyn J. Woodruff filed a notice of appearance on 25 March 2011, stating she was now Defendant's attorney of record. Defendant executed an affidavit, which was filed 13 April 2011, in which she affirmed:

> 11. I was present at the courthouse on the day of the trial with attorney, Mary Gurganus, who was acting informally on my behalf.
>
> 12. I was told by Ms. Gurganus that there

was no point going into the courtroom as there was nothing I could do on my behalf. I choose [sic] to follow Ms. Gurganus' legal advice and leave the courthouse.

13. I was also under pressure from [Mr. Puryear] not to defend this action.

The trial court entered its judgment on 15 May 2013, awarding compensatory damages in the amount of $10,000,000.00 and punitive damages in the amount of $20,000,000.00. Defendant appeals.

I.

Defendant's first, second, fourth, and fifth arguments involve constitutional questions that were not raised at the trial level. Because Defendant failed to raise these arguments at trial and therefore obtained no ruling on these issues, they have not been preserved for appellate review. N.C.R. App. P. 10(a)(1) (2014) ("In order to preserve an issue for appellate review, a party must have presented to the trial court a timely request, objection, or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context. It is also necessary for the complaining party to obtain a ruling upon the party's request, objection, or motion."); *In re Bullock*, __ N.C. App. __, __, 748 S.E.2d 27, 33, *disc. review denied*, __ N.C. __,

752 S.E.2d 149 (2013). Defendant's first, second, fourth, and fifth arguments are therefore dismissed.

II.

Defendant's third argument also involves a constitutional question not raised at trial, but because Defendant asserts the trial court lacked subject matter jurisdiction, we address this argument. Defendant argues that "the laws of alienation of affection and criminal conversation are unconstitutional" and thus claims pursuant to these laws could not vest subject matter jurisdiction in the trial court. In light of North Carolina Supreme Court precedent, we disagree.

This Court attempted to eliminate causes of action for alienation of affection and criminal conversation in 1984, reasoning that causes of action originally predicated on a wife's status as property of her husband no longer had a place in North Carolina jurisprudence. *Cannon v. Miller*, 71 N.C. App. 460, 322 S.E.2d 780 (1984) ("*Cannon I*"), *vacated*, 313 N.C. 324, 327 S.E.2d 888 (1985). By 1985, nearly half of the states in this country had abolished these "heart-balm" torts. *Cannon I*, 71 N.C. App. at 478, 322 S.E.2d at 793. On appeal, however, our Supreme Court did not address the merits of the analysis in *Cannon I*. It simply vacated *Cannon I* because the Court of Appeals had no authority to overturn prior opinions of our

Supreme Court. *Cannon v. Miller*, 313 N.C. 324, 327 S.E.2d 888 (1985) ("*Cannon II*").

In the intervening period, many additional states have abolished these heart-balm torts. It appears that today only Hawaii, Illinois, Mississippi, New Mexico, North Carolina, South Dakota, and Utah continue to have these laws in effect. However, in most of these states, heart-balm torts are frequently discouraged and rarely pursued. *See Hunt v. Chang*, 594 P.2d 118 (Haw. 1979) (last appellate opinion considering alienation of affection in Hawaii and, though not abolishing the cause of action, not favorably disposed thereto); *Murphy v. Colson*, 999 N.E.2d 372 (Ill. Ct. App. 2013) (discussion of legislation barring punitive, exemplary, vindictive, and certain compensatory damages in heart-balm torts after legislation abolishing these torts was found to violate the Illinois Constitution); *Germany v. Germany*, 123 So. 3d 423 (Miss. 2013) (most recent Mississippi alienation of affection opinion located on Westlaw, though it appears this cause of action is still relatively common in Mississippi); *Padwa v. Hadley*, 981 P.2d 1234, 1240 (N.M. Ct. App. 1999) (though alienation of affection has not been formally abolished in New Mexico, it seems to be infrequently utilized, and, when the appellate courts discuss it, they do so with "disfavor"); *Veeder v. Kennedy*, 589 N.W.2d

610, 616 (S.D. 1999) (Supreme Court of South Dakota holding that, despite public policy arguments advanced for its abolition, alienation of affection in South Dakota was a statutory, not a common law, cause of action; therefore the Supreme Court was "compelled to leave the cause of action intact and instead defer to the legislature's ability to decide if there is a need for its elimination"); *Norton v. Macfarlane*, 818 P.2d 8 (Utah 1991) (abolishing tort of criminal conversation in Utah); *Williams v. Jeffs*, 57 P.3d 232 (Utah Ct. App. 2002) (alienation of affection cause of action still viable in Utah).

This Court held in *Nunn v. Allen* that "[n]either [a claim for alienation of affection nor criminal conversation] is a statutory creation; both emanate from the common law and have been recognized by our Supreme Court." *Nunn v. Allen,* 154 N.C. App. 523, 530, 574 S.E.2d 35, 40 (2002) (citations omitted). This Court has no authority to overrule decisions of the North Carolina Supreme Court.

In the present case, Defendant argues that the trial court lacked subject matter jurisdiction "to enter judgment against . . . Defendant because the laws of Alienation of Affection and Criminal Conversation are unconstitutional[.]" However, Defendant provides no citation to authority in support of this proposition, and we can find none. The Third Circuit Court of

Appeals has stated: "When disposing of a claim brought under an unconstitutional statute, courts ordinarily deny the claim on the merits, on the ground that the statute under which relief is sought is unconstitutional, rather than for lack of subject matter jurisdiction." *Nesbit v. Gears Unlimited, Inc.*, 347 F.3d 72, 82 (3d Cir. 2003) (citations omitted). Our Supreme Court has acted in accordance with this statement. *See*, e.g., *Williams v. Blue Cross Blue Shield of N.C.*, 357 N.C. 170, 192, 581 S.E. 2d 415, 430-31 (2003). Even if we were to hold that "the laws of Alienation of Affection and Criminal Conversation are unconstitutional," which we are clearly without authority to do, *Cannon*, 313 N.C. at 324, 327 S.E.2d at 888, we would be exercising our jurisdiction to reach this conclusion. Because this argument does not touch on the jurisdiction of this Court, and because Defendant did not raise this argument at the trial level, she has abandoned it. N.C.R. App. P. 10(a)(1); *Bullock*, __ N.C. App. at __, 748 S.E.2d at 33.

## III.

In her final argument, Defendant contends the trial court "erred in its present value calculation contained in paragraph one of the decretal portion of the judgment[.]" We disagree.

Defendant cites *Weaver v. Weaver*, 72 N.C. App. 409, 324 S.E.2d 915 (1985), *disapproved of on different grounds by*

*Armstrong v. Armstrong*, 322 N.C. 396, 368 S.E.2d 595 (1988), for the proposition that a reasonable rate of comparison in calculating present value could be obtained by reference to "Treasury bill rates[.]" *Id*. at 415, 324 S.E.2d at 919. Defendant then argues: "In this case, the [trial] court used the Market T-Bill Rate of 1.66% as of May 1, 2013." **Br 28** This is the only citation to authority Defendant includes in her argument. Although Defendant further argues that "[t]he trial court appears to be present valuing only one year of lost support" whereas the "purpose of these particular compensatory damages is to replace the lost income that Plaintiff would have received had she remained married to [Mr. Puryear] for the remainder of his life, which according to the mortality tables is twenty-five years[,]" Defendant cites to no authority in support of this contention. Defendant also cites no authority and makes no argument indicating how the trial court should have calculated present value in this instance. This Court does not make arguments for a party. N.C.R. App. P. 28(b)(6); *Goodson v. P.H. Glatfelter Co.*, 171 N.C. App. 596, 606, 615 S.E.2d 350, 358 (2005) ("It is not the duty of this Court to supplement an appellant's brief with legal authority or arguments not contained therein."). This argument is deemed abandoned.

Dismissed.

Judges STEELMAN and ERVIN concur.

Report per Rule 30(e).